THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONEL GONZALEZ, Defendant-Appellant.

(No. 73-202;

Second District—December 5, 1974.

James Cutrone and Sam Adam, both of Chicago, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted in a jury trial of the offenses of possession and delivery of a controlled substance (Ill. Rev. Stat. 1973, ch. 56½, pars. 1401, 1402) and sentenced to 2-6 years for each offense, to be served concurrently.

On appeal, defendant contends that it was reversible error to refuse his tendered instruction on the issue of entrapment, to admit a quantity of heroin seized from defendant's home without a warrant and to admit into evidence marked bills taken pursuant to an allegedly defective search warrant. He also claims that the prosecutor's closing argument was improper and deprived him of a fair trial.

The principal witness for the prosecution was James Walton, an informer, who, on July 18, 1972, made a controlled purchase of heroin from the defendant. He testified that on the day in question he was strip-

searched by Aurora police officers and provided with $35 in marked U.S. currency. He was then taken in an unmarked police car to the immediate vicinity of the defendant's home. He exited the vehicle, walked to the defendant's house, knocked on the door and was invited in. He told the defendant that he wanted to purchase heroin and handed the defendant the $35 in marked money. He then observed the defendant go to a coloring book on the stairway leading to the second floor and remove an aluminum-foil packet containing heroin. Walton testified that he took the packet and returned to the police car. There, he told the police officers what had taken place and handed them the foil packet he had purchased from the defendant. He was again searched.

Officers Such and Beatus testified that they then proceeded to the front door of defendant's home. The inner door was open although the screen door was closed. The officers walked into the entranceway which led into the living room and observed defendant coming from the dining room area toward the living room. Officer Beatus announced that he was a police officer and told the defendant he was under arrest. The defendant then started walking away toward the couch in the living room but was told to wait and was then handcuffed. Officer Such who had been told by Walton that the heroin was taken from a coloring book with the upper righthand corner torn off looked at the staircase upon entering and observed the coloring book on the stairway which was about 4 feet from the front door. He picked up the book and went through the pages, observing the presence of four more foil packets.

The defendant denied knowledge of the transaction or of the whereabouts of the prerecorded funds.

Officers Such and Beatus then contacted Sergeant Genslinger of the Aurora Police Department and provided him with sufficient information to obtain a search warrant. Thereafter, the defendant's home was searched and the prerecorded bills were recovered from the bathroom area of the house. The heroin and currency were admitted into evidence over defendant's objection.

The defendant testified that on July 17, 1972, Walton came to his home, showed him a gold bracelet in a jewelry box and offered to sell it. When defendant refused to buy, Walton requested a $35 loan instead. The defendant agreed to make the loan and the bracelet was used for security. The following day Walton returned and repaid the loan, whereupon defendant returned the box containing the bracelet. At that point the telephone rang and defendant testified that he left the living room to answer it, thus leaving Walton alone for a short period of time. While the defendant was on the phone he was unable to see Walton. As defendant re-entered the living room Walton, who was standing by the front door,

said good-bye and left. Defendant said he was arrested a few minutes later.

Walton testified on rebuttal that he went to defendant's home on July 17 but that he did so in order to purchase more heroin. He denied making a loan from defendant and leaving the bracelet as security.

■■ On this record we find no error in the refusal of the trial court to give the tendered instruction on entrapment. It is clear that a defendant is entitled to an instruction explaining any theory of his defense which the jury might legitimately find to have been proven by the evidence. (*People v. Kalpak* (1957), 10 Ill.2d 411, 424.) Here, the theory of the defense as established by defendant's testimony was that the informer, in the guise of leaving security for a loan, had "planted" the contraband which defendant innocently returned to him upon repayment of the loan. If this were true, defendant acted without "guilty knowledge," an essential element of the offense charged, and the required mental state for the crime was therefore lacking.

■■ The defendant's theory was obviously before the jury and they had been properly instructed on the elements of the offense as well as the State's burden of proof. If the jury had believed that the defendant's testimony was more credible than that of the informer, they could easily have rendered a not guilty verdict within the confines of the instructions that were given. In addition, the defendant denied at all times that he possessed or sold any heroin, and it is clear that the defense of entrapment may not be raised when a defendant denies the facts constituting the offense. (*People v. Calcaterra* (1965), 33 Ill.2d 541, 546; *People v. Realmo* (1963), 28 Ill.2d 510, 512; *People v. Outten* (1958), 13 Ill.2d 21, 23.) Here, despite the possibility raised by defendant's testimony that the heroin had been "planted," there is no evidence of entrapment and thus no basis for the giving of an instruction relating to the specific defense. Accordingly, and in view of the fact that this is not a case where the proof was so unsatisfactory as to justify entertainment of a reasonable doubt of guilt, we find no error in refusing the instruction. *People v. Fleming* (1971), 50 Ill.2d 141, 144; see *People v. Glass* (1959), 16 Ill.2d 595, 597; compare *People v. Strong* (1961), 21 Ill.2d 320, 325; *People v. Dollen* (1972), 53 Ill.2d 280, 284-85.

■ ■ The defendant next claims that the warrantless search of his home which resulted in the additional heroin being found in the coloring book on the interior stairway was constitutionally impermissible and that the subsequent admission of the evidence over objection was reversible error. We do not agree. Based upon the information received from Walton when he returned to the unmarked police car, Officers Such and Beatus had probable cause to enter the defendant's residence (see Ill. Rev. Stat.

1973, ch. 38, par. 107—5(d)), and to make the subsequent arrest. (*People v. Barbee* (1966), 35 Ill.2d 407, 411; *People v. Carter* (1971), 132 Ill.App.2d 572, 576-77.) Once in the house, the coloring book, the very object Walton had described as the repository of the heroin, was in plain view and was therefore properly seized without the necessity of a search warrant. See *People v. Joyner* (1972), 50 Ill.2d 302, 310-11; *People v. Wright* (1968), 41 Ill.2d 170, 174-75; *People v. Barbee,* 35 Ill.2d 407, 412; *People v. Scott* (1973), 13 Ill.App.3d 620, 625.

Shortly after the coloring book was seized defendant's home was searched pursuant to a warrant issued by a judicial officer and the marked currency described in the warrant was found in the defendant's bathroom. Defendant claims, however, that the search warrant was not valid. He argues that the warrant was applied for, issued and executed on July 18, 1972, but that it recited facts relied upon to show probable cause occurring with the arrest of defendant on "June 18th, 1972." There is no evidence in the record, however, indicating any prior sale of heroin on *June 18*; rather, the proof conclusively shows that the sale in question was made on *July 18,* the date of the supporting affidavit and the date of the issuance and execution of the search warrant. It is thus apparent from the record that the affidavit contained a clerical error.

■■ The question then becomes whether a clerical error on the face of a supporting affidavit which would tend to show facts too remote to constitute probable cause on the date of the search (see *Sgro v. United States* (1932), 287 U.S. 206; *People v. Montgomery* (1963), 27 Ill.2d 404, 405) invalidates a search warrant based upon such an affidavit. Defendant contends that the facts related in an affidavit supporting a search warrant cannot be controverted, citing *People v. Bak* (1970), 45 Ill.2d 140, and *People v. Mitchell* (1970), 45 Ill.2d 148. The holding that there is no right to controvert matters declared under oath which occasion the finding of probable cause and the issuance of a search warrant by a judicial officer does not, in our view, preclude a showing of what is clearly a clerical error. The weight of authority supports this view. (See Annot., 100 A.L.R.2d 525, 543; *Lyons v. State* (Tex. Crim. App. 1973), 503 S.W.2d 254, 255-56; *State v. Cain* (Fla. App. 1972), 272 So.2d 548, 549; *Flinn v. State* (1953), 97 Okla. Crim. 28, 257 P.2d 324, 325; *Hendricks v. State* (1926), 144 Miss. 87, 109 So. 263, 264; *Pera v. United States* (9th Cir. 1926), 11 F.2d 772, 773; *Baker v. Commonwealth* (1924), 204 Ky. 536, 264 S.W. 1091, 1092.) Here the evidence and circumstances clearly indicate the existence of probable cause. Accordingly we hold that the search warrant was properly issued and that the trial court correctly denied the motion to suppress the evidence obtained pursuant to that warrant.

264

Defendant has also complained that the prosecutor's final argument deprived him of a fair trial. The defendant characterizes the argument as containing repeated and inflammatory expressions of the prosecutor's personal opinion as to the guilt of the defendant and prejudicial reference to matters outside the record as to which defendant's objections were repeatedly overruled.

It is permissible for a prosecutor to express his opinion of the guilt of the accused if his argument is based on the proof or legitimate inferences therefrom (*People v. Prim* (1972), 53 Ill.2d 62, 77; *People v. Hairston* (1970), 46 Ill.2d 348, 375). Here the prosecutor's statement expressing his opinion of the guilt of the accused were substantially based on the evidence. And, the remarks of the prosecutor which reflected unfavorably on the accused and urged fearless administration of the law were not beyond proper bounds. See *People v. Stock* (1974), 56 Ill.2d 461, 467; *People v. Benedik* (1974), 56 Ill.2d 306, 311; *People v. Hampton* (1962), 24 Ill.2d 558, 561.

■■■ Furthermore, the portion of the prosecutor's argument which referred to the appearance in court of the defendant's pregnant wife and his children as being a plea for sympathy and a "dirty trick" did not create reversible error on the whole record. (See *People v. Weaver* (1972), 7 Ill.App.3d 1104, 1107.) It is only the prosecutor's statement that there was no way to get fingerprints off an aluminum foil packet that we consider improper. Although the remark was made in response to defense counsel's comment regarding an absence of fingerprint analyses on the foil packets, it was not based on an evidentiary foundation and was therefore improper. Nevertheless, the mere occurrence of improper remarks by a prosecutor does not by itself constitute reversible error. For such remarks to constitute error it must appear that they were a material factor in the conviction, or that they resulted in substantial prejudice to the accused such that without the remarks the verdict would probably have been different. (*People v. McCorry* (1972), 51 Ill.2d 343, 350-51.) The challenged remarks in this record are not of that magnitude.

For the reasons stated we therefore affirm the judgment below.

Affirmed.

T. MORAN and RECHENMACHER, JJ., concur.