THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARK DEVEAUX, Defendant-Appellant.

First District (5th Division)   No. 1—88—2443

Opinion filed September 28, 1990.—Rehearing denied November 5, 1990.

Joel W. Ostrander, of Chicago, and James M. Murphy, of Dallas, Texas, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

After a bench trial, defendant, Mark Deveaux, was convicted of possession with intent to deliver more than 30 grams of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and possession with intent to deliver more than 500 grams of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 705(e)) and sentenced to concurrent terms of seven and five years in prison. On appeal, he contends: (1) he was denied effective assistance by his privately retained counsel; (2) the search warrant used to seize the controlled substance and cannabis was invalid; (3) his confession was improperly admitted because he did not receive his full *Miranda* warnings; and (4) his jury waiver was ineffective because it was not in writing. We affirm.

Officer Calvin Holliday, testifying for the State, stated that on November 3, 1986, he obtained a warrant to search apartment No. 705 at 7636 South Shore Drive in Chicago (hereinafter apartment No. 705). The warrant was obtained on Officer Holliday's sworn "Complaint for Search Warrant" which stated that on November 2, 1986, a confidential informant had told him that he had gone to apartment No. 705 with a person named "Mark" who gave him a substance which he knew to be cocaine. The warrant authorized the search of Mark and apartment No. 705 and the seizure of drugs, proof of residence, records of drug transactions, and commingled United States currency. Though the lefthand margin of the warrant contained a notation of an assistant State's Attorney's approval of the warrant at "3 Nov 86 1045 hrs," the handwritten time and date of issuance appearing on the warrant was "11:23 p.m. on Nov. 3, 1986."

Officer Holliday stated that he and a number of other police officers went to apartment No. 705 at approximately 12:45 p.m. on November 3, 1986, to execute the search warrant. Holliday knocked on the apartment door, and it was eventually opened by a woman whom he later learned was Monique King. When he told King that he had a search warrant for the apartment, she allowed him and his fellow officers to enter. They then secured the apartment and began searching

the bedroom for the items listed in the warrant. During the search, Holliday found two clear plastic bags containing a white powder, later identified as cocaine, on top of a dresser and $2,000 in United States currency in its drawer. He also found 20 clear plastic bags—four containing a white powder, later identified as cocaine, and 16 containing a crushed green plant, later identified as cannabis—in a foot locker in the bedroom.

Holliday seized the drugs and the currency and prepared to leave the apartment. When he opened the front door, he saw a person, whom he later identified as the defendant, holding a handbag while leaning "at" the door. When defendant identified himself as Mark Deveaux, Holliday took his handbag and placed him under arrest. One of Holliday's partners, Officer Robert Montgomery, then read defendant his *Miranda* rights from a police procedures handbook. As he was reading these rights, Holliday searched through defendant's handbag and found $2,102 in United States currency. After Montgomery had completed reading the rights, Holliday asked defendant why he had not used his key to enter the apartment, and defendant responded that he had broken the key in the lock. Upon Holliday's request, however, defendant did give him a key to the building's elevator which, Holliday discovered, fit the elevator door. Also, Holliday asked defendant if the bags of white powder and crushed green plant found in the apartment were his, and defendant responded that they were.

On cross-examination, Holliday stated that when he searched defendant and found the money in his handbag he found no contraband on his person. He also attested that when Montgomery read defendant's *Miranda* rights from the police procedures handbook, he read those rights in their entirety. Holliday stated that he always used that handbook when "Mirandizing" a defendant because he did not memorize those rights by rote. Holliday also verified that his partner asked defendant if he understood his rights after they were read to him and defendant said he did.

In addition, Holliday confirmed that he personally noticed a broken key in the lock after defendant had pointed it out to him. After he questioned defendant at the apartment, he took him to the police station. There, defendant told him that he lived in apartment No. 705. Holliday denied, however, that he had signed an arrest sheet which had defendant's address typed "7636 South Shore" directly above a crossed out notation that his address was "1758 East 74th Street."

The parties stipulated to the chain of custody regarding the elevator key and the seized narcotics and as to the quantity and identity of those narcotics. Thereafter, Cloda Robinson, the superintendent of the

7636 South Shore Drive building, testified on behalf of defendant. He stated that Monique King had an oral lease and paid the rent for apartment No. 705 and, to the best of his knowledge, only she and her children occupied that apartment. He further stated that he had seen defendant around the building but could not say how often he was there.

Defendant testified that he lived at 1758 East 74th Street, had lived there for 16 years, and never had lived at or paid rent for any apartment at the 7636 South Shore Drive building. He stated that he was at the 7636 South Shore Drive building on November 3 to visit his friend, Monique King. He had been to her apartment on only two previous occasions. When he arrived at the building, he first rang the bell to her apartment but, when there was no answer, he walked onto an elevator with other people and then rode the elevator to the seventh floor. When he arrived at King's apartment, a police officer opened the door and told him to come in. When he responded affirmatively to that officer's question whether his name was Mark, he was then handcuffed and read his rights. The police then searched him and took his keys. He denied that any of his keys fit the apartment door and further stated that he never had a key to that door. He further denied ever telling the police that the contraband found in the apartment was his or that he lived at that address.

On cross-examination, defendant stated that he had known Monique King for three months but did not recall the dates of his prior visits to her apartment. Upon further questioning, however, he stated that the visits must have been in October. He further stated that in November of 1986 he worked for his grandmother, doing maintenance work and collecting rents at her apartment buildings. He admitted having approximately $2,100 in the handbag he was carrying when arrested and explained that all but $100 of that money was rent money he had collected for his grandmother. He denied ever telling Officer Holliday that he had broken the key to the apartment door and acknowledged receiving all his keys back from the police officers.

After hearing closing arguments, the trial judge found defendant guilty of possession with intent to deliver a controlled substance and cannabis, stating:

"I believe the key to the case is whether or not the defendant said what the officer has testified that the defendant said. All the officer said—so it is a matter of credibility. And the court considers that if the defendant did say this, then it is a confession as such, and together with the substances that were found and other circumstances is sufficient."

Thereafter, prior to sentencing, defense counsel made an oral motion to examine the key to the elevator which Officer Holliday had said he obtained from defendant. He claimed that an examination of that key to determine if it actually fit the elevator was important in assessing the credibility of the two main witnesses, Officer Holliday and the defendant. The trial judge denied that motion, commenting:

> "The Court considered the totality of evidence and the testimony relative to the entire circumstances and relative to all of the acts and actions of the parties.
>
> The Court does not consider the key to be the key to the case as such. It is one of the matters which is in evidence.
>
> The Court does not consider that it would be appropriate procedure, and the Court does not consider such a procedure would result in a different decision in the case."

OPINION

Although defendant raises four separate issues on appeal, two of the issues, those dealing with the validity of the search warrant and the admissibility of the confession, are intertwined with his ineffective assistance of counsel issue and we will therefore address these two issues in our discussion of the ineffective assistance issue.

■ Defendant claims ineffective assistance of counsel based on his privately retained attorney's failure to file: (1) any motion for discovery; (2) a motion to quash the search warrant; or (3) a motion to suppress his confession. Ineffective assistance of counsel claims are measured by the standards which were set forth in the United States Supreme Court's opinion in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Under these standards, a defendant claiming ineffective assistance must show that counsel has failed to perform in a reasonably effective manner and there is a reasonable probability that, but for this ineffective performance, the proceeding's outcome would have been different. (*Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) There is a strong presumption that counsel has performed effectively, and it is a defendant's burden to prove otherwise. See *People v. Whittaker* (1990), 199 Ill. App. 3d 621, 627, 557 N.E.2d 468, 471.

Defendant claims ineffective assistance based on his counsel's failure to file any motions for discovery prior to trial. Specifically, he argues that had his counsel conducted discovery, he would have learned of the existence of the elevator key and the name of the confidential informant, both of which were important in establishing defendant's

connection to apartment No. 705, a point which he deems "the very issue on which the trial court based its finding of guilt." As proof of the significance of the key, defendant points to the fact that his trial counsel did seek an examination of that key after trial, because of his recognition that it was important in assessing the credibility of witnesses, but was denied such a request.

■ We find that counsel's failure to conduct discovery did not constitute ineffective assistance of counsel under the circumstances of this case. Without considering the question whether a decision to forego the filing of a motion for discovery is under all circumstances a deficient performance by counsel, we note that defendant has failed to demonstrate how the trial outcome would have been different had a motion for discovery been filed. There is no evidence in the record that counsel's decision resulted in any unpreparedness on his part. To the contrary, the record demonstrates that counsel did provide effective representation for defendant. Furthermore, though the key and the informant both do "connect" defendant to apartment No. 705 or, at least, the building where it is located, defendant's connection to the apartment or the building was not, as defendant suggests, "the very issue on which the trial court based its finding of guilt." As is evident from the remarks made by the trial judge when he made his finding of guilt, his finding was based on defendant's ownership of the drugs found in apartment No. 705. Ownership was established by defendant's admission that the drugs were his as well as the various other incriminating circumstances, such as the drugs themselves and defendant's presence at the apartment door with an unusually large sum of money. Moreover, even if defendant's connection to the building were as significant as claimed, there was other evidence to establish that point. Defendant himself testified that he had visited his friend, Monique King, at her apartment on two previous occasions, and Cloda Robinson, the superintendent of the 7636 South Shore Drive building, testified that he had seen defendant at the building on previous occasions. Thus, it cannot be reasonably said that a failure to discover the existence of the key or the name of the confidential informant in any way harmed defendant.

■ Additionally, with respect to the confidential informant, we note that even if defendant's counsel had requested his name, disclosure is not automatic (107 Ill. 2d R. 412(j)(ii)) and need not be made if the informant is not a material witness to the crime charged. (*People v. Saldana* (1986), 146 Ill. App. 3d 328, 333-34, 496 N.E.2d 757, 762.) In the present case, the confidential informant was not a material witness to anything that transpired on November 3, 1986. He merely

provided information regarding an illegal incident occurring on November 2, 1986, for which defendant had not been charged. Though that information formed the basis for the search warrant executed on November 3, that fact does not make the informant a material witness to the crimes committed on that date.

Defendant next claims that he received ineffective assistance as a result of his counsel's failure to move to quash the search warrant where the face of the search warrant demonstrates that it was issued after the search of apartment No. 705 and his arrest. As indicated above, the warrant shows an issuance time of 11:23 p.m. on November 3, 1986, which, according to the evidence, was approximately 10 hours after the search and arrest. Relying upon *People v. Stokes* (1977), 49 Ill. App. 3d 296, 364 N.E.2d 300, defendant argues that based on these facts counsel should have known that the search warrant was invalid and his failure to move to quash it constituted a deficient performance of such a magnitude as to prejudice his defense.

■ There is a presumption that the item indicated on a search warrant by the issuing judge controls its validity, but extrinsic evidence is permitted to show and correct an obvious clerical error. (*People v. Young* (1978), 60 Ill. App. 3d 49, 55, 476 N.E.2d 712, 717.) Furthermore, "[n]o warrant shall be quashed *** because of technical irregularities not affecting the substantial rights of the accused." (Ill. Rev. Stat. 1985, ch. 38, par. 108—14; *People v. Lozada* (1977), 55 Ill. App. 3d 366, 368, 371 N.E.2d 50, 51.) We find that the record in this case supports a conclusion that the time of issuance was a technical irregularity which did not affect defendant's substantial rights.

■ Officer Holliday's uncontroverted testimony shows that he had the search warrant in his possession when he arrived at apartment No. 705 at approximately 12:45 p.m. on November 3, 1986. He testified, and was not contradicted, that his purpose for being at the apartment was to execute the warrant. He also stated, again without contradiction, that he gained admission to the apartment only after telling Monique King that he had a search warrant. Furthermore, defendant's trial counsel did question Holliday as to whether he had the warrant with him when he was at the apartment, both during a preliminary hearing and at trial, and Holliday affirmatively responded to all questions asked on the subject. Based on this evidence, it is apparent that the search warrant could not have been issued after the search of the apartment and arrest of defendant and, thus, the time of issuance stated on the warrant can properly be characterized as a technical irregularity, and not violative of any of defendant's substan-

tial rights. See *People v. Young* (1978), 60 Ill. App. 3d 49, 55, 376 N.E.2d 712, 717.

■ The requirement of a search warrant is designed to protect the right of a person to be secure in his possessions from unreasonable searches and seizures. (Ill. Const. 1970, art. I, §6.) That right was not violated or disturbed in this case. Officer Holliday's complaint for search warrant was supported by an affidavit which described the place to be searched and the person and things to be seized. Defendant has made no claim that the warrant was issued without probable cause. After obtaining the warrant, Holliday executed it at the apartment and there seized the drugs which defendant admitted were his. Defendant has made no claim that the search or the seizure was in any way unreasonable. Thus, there was no violation of his substantial rights, notwithstanding the erroneous transcription of the issuance time.

■ This case is similar to *People v. Lozada* (1977), 55 Ill. App. 3d 366, 371 N.E.2d 50, where the court found that the omission of the issuance date on the face of a search warrant, which included a notation of an assistant State's Attorney's approval of the warrant on the date of execution, constituted a technical irregularity which did not affect the accused's substantial rights. The court held that *uncontroverted* testimony of a police officer as to the sequence of the approval of the assistant State's Attorney, the issuance of the warrant and its execution cured this irregularity. Similarly, in the present case, Officer Holliday's uncontroverted testimony as to the time of execution of the search warrant together with the notation of the assistant State's Attorney's approval on the warrant cured the technical irregularity of the wrong issuance time. Accord *People v. Gonzalez* (1974), 24 Ill. App. 3d 259, 263, 320 N.E.2d 197, 201.

*People v. Stokes* (1977), 49 Ill. App. 3d 296, 364 N.E.2d 300, cited by defendant, is distinguishable from the present case. *Stokes* did involve the question whether a search warrant was properly quashed where the issuing date on the face of the warrant was later than the date of the actual search and seizure. However, in that case, the State had failed to make an offer of proof which explained that the date on the warrant was a mere irregularity. Moreover, the court there noted, albeit in *dictum*, that there was nothing in the record to indicate that the trial judge had intended to issue the warrant prior to the search and seizure. In the present case, Holliday's uncontroverted testimony that he had the warrant before he entered the apartment at approximately 12:45 p.m. on November 3, 1986, was proof that the trial judge had, in fact, issued the warrant prior to the search and seizure.

Defendant last claims that he received ineffective assistance based on his counsel's failure to file a motion to suppress his confession in light of evidence in the record that he did not receive his full *Miranda* warning before he gave his confession. He further claims ineffective assistance because under the "fruit of the poisonous tree" doctrine (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407) his confession would have been suppressed as the product of his illegal arrest based on an illegal search warrant. Having already concluded that the warrant was valid, we need consider only his first claim.

■ We find that the record does not support this claim of ineffective assistance because it discloses that he did receive his full *Miranda* warnings. Officer Holliday testified that Officer Montgomery read defendant "his rights" from the police procedures handbook and that he read the whole passage (contained in the handbook) to defendant. He further stated that whenever he read a defendant his rights, he also read from that handbook because he did not know the rights by heart. Additionally, defendant himself testified that he was read his rights.

Defendant, however, points to the following testimony of Officer Holliday, given after he already had testified that he did not know these rights by heart and had to read them from the police procedures handbook, as proof that he was not read his full rights:

"Q. [By Mr. Adam (Defense Counsel)]: You say that you heard Officer Montgomery advise the defendant of his rights, is that right?

A. Yes, sir.

Q. You say that he read those from a book?

A. From an F.O.P. booklet (the police procedures handbook), that is correct.

Q. Are you able to tell the Court any of those rights that you say Montgomery advised the defendant of at that time?

MR. GEANOPOULOS [assistant State's Attorney]: Objection.

THE COURT: The witness may answer that question yes or no, if he can. Overruled.

THE WITNESS: Yes.

BY MR. ADAM:

Q. All right. Give us your best recollection as to what Montgomery said?

A. He have [*sic*] advised Mr. Deveaux that he had the right to remain silent. He also advised him that he had the right to

have a lawyer present with him during any questioning. I don't remember anything other than that."

We find that this portion of Officer Holliday's testimony, when read together with his other testimony, does not, as defendant claims, establish that he was not given his full *Miranda* warnings. It merely confirms Holliday's prior testimony that he did not memorize these rights by rote. The trial court judge, who heard all of the testimony, apparently agreed because he found that defendant was read all of his rights. Under these circumstances, we cannot say that trial counsel's failure to move to suppress defendant's confession constituted ineffective assistance.

Defendant's last claim is that his oral jury waiver, made in open court, was not effective because it was not reduced to writing. He does not claim, however, that his oral waiver was not voluntarily and knowingly made. Instead, he argues that section 115—1 of the Code of Criminal Procedure of 1963 (hereinafter Code) (Ill. Rev. Stat. 1987, ch. 38, par. 115—1) mandates that a jury waiver be in writing to be effective.

Section 115—1 of the Code provides:

"All prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives such jury trial in writing or, in a criminal prosecution where the offense charged is first degree murder, a Class X felony, criminal sexual assault or a felony violation of the Cannabis Control Act or the Illinois Controlled Substances Act both the State and the defendant waive such jury trial in writing." (Ill. Rev. Stat. 1987, ch. 38, par. 115—1.)

This statute, however, was declared unconstitutional by our supreme court in *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 533 N.E.2d 873, though on grounds other than the invalidity of the requirement that a jury waiver be in writing. Nonetheless, with this statute having been declared unconstitutional, there is no law in Illinois requiring that a waiver be in writing. Section 103—6 of the Code, the section dealing with jury waivers, merely requires that "[e]very person accused of an offense shall have the right to a trial by jury unless *understandingly* waived by defendant in open court." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 103—6.) There is no precise formula for determining whether a waiver has been understandably made, with each case being decided on its facts (*People v. Totah* (1989), 192 Ill. App. 3d 239, 246, 548 N.E.2d 678, 682), and an effective waiver may either be made orally in court or in writing. (See *People v. Brown* (1958), 13 Ill. 2d 32, 34, 147 N.E.2d 336, 337; *People v.*

*Williams* (1977), 47 Ill. App. 3d 798, 802, 365 N.E.2d 415, 418.) There being no dispute that defendant's oral waiver was made in open court and was understandably made, it was valid under existing law.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

COCCIA, P.J., and LORENZ, J., concur.