21 IL App (1st) 173008-U
No. 1-17-3008
JUNE 30, 2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | No. 15 CR 6616 |
| v. | ) | |
| | ) | The Honorable |
| AMIN SMITH | ) | Vincent M. Gaughan., |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman concurs in the judgment. Justice Coghlan dissenting.

## Order

¶ 1        *Held*: The prosecutor's unsworn statement in closing argument about the effects of fistfights on the ones who punch deprived the defendant of a fair trial.

¶ 2        A jury found Amin Smith guilty of first-degree murder. Smith argues on appeal that the prosecutor effectively testified in closing argument, and the testimonial remarks made the trial unfair. We find that the prosecutor's remarks exceeded the bounds of fair inference from the

evidence, and in this case with closely balanced evidence, the remarks amount to plain error. We reverse and remand for a new trial.

¶ 3                                                  I. BACKGROUND

¶ 4         On March 22, 2015, Smith called his friend, Donald Hall, seeking a ride for Smith and another friend, Dushanti Hassell. When Smith arrived at Hall's home, Hall's girlfriend, Ruby Lockhart, joined them. They picked up Hassell and drove only a short distance before Hall stopped in an alley to urinate. Smith and Hassell exited Hall's jeep. Smith and Hassell had words, then started fighting. Smith got hold of the gun Hassell carried and shot Hassell once in the head. Smith and Hall rushed back to the jeep and drove off.

¶ 5         A person who lived near the alley heard the fight and the shot and called 911. Police found Hassell dead in the alley, with Hassell's cellphone nearby, and Smith's cellphone a few feet away. A few days later, Smith went to the police station because he had learned police had come to his home to question him. A grand jury indicted Smith for first degree murder.

¶ 6         At trial, the pathologist testified that the absence of stippling indicated that Smith shot Hassell from at least two feet away. The pathologist also found blunt force trauma to Hassell's lips. The prosecutor asked, "Q. Did you find any wound or injuries anywhere else on the body?" The pathologist answered, "No."

¶ 7         Hassell's best friend testified that Hassell, a gun enthusiast, always carried a gun. Witnesses from the neighborhood testified that they heard the shot. One heard a "physical scuffle," or "fighting," before the shot.

¶ 8         Hall testified that he did not hear how the fight in the alley started. He saw Hassell wrestling with Smith, and then he saw Smith stand with Hassell's gun in his hand. Hall heard

2

Hassell say "please," then he heard a shot. Hall and Smith ran to the jeep. As they drove off, Smith looked for his cellphone, but he could not find it.

¶ 9        Lockhart corroborated Hall's testimony about the stop in the alley and Smith looking for his cellphone after they returned to the jeep. She did not hear the fight or the shot because she stayed in the jeep listening to music. However, she did see Smith's hand bleeding.

¶ 10        Smith testified that when they exited the jeep in the alley, Hassell asked to talk to Smith. They walked off, and Hassell asked Smith for money. Hassell got angry when Smith refused. Hassell then showed Smith the gun he held in his waistband and said, "F*** asking." Hassell punched Smith, and Smith hit back hard and went for Hassell's gun. They wrestled and Smith fell back with the gun in his hand. When Hassell started to get up, Smith, fearing for his life, shot Hassell once and ran to the jeep. He wiped the blood off his hand and the gun and wrapped the gun in a towel he found in the jeep. He threw the gun and the towel into Lake Michigan.

¶ 11        The court instructed the jury on self-defense and second-degree murder based on both serious provocation and unreasonable belief in the need for self-defense.

¶ 12        In closing argument, the prosecutors stated:

"[W]ho is the person with the bloody hands? The defendant. Who is the person with the cuts and bruises on his lips? The victim. Was there a single mark or scratch on the victim's hands? Remember, [Smith] talked about getting punched five times in the face. No, there wasn't a laceration, there wasn't a cut, there wasn't an [] abrasion, there wasn't a contusion, there wasn't a paper cut on that victim's hands, and the medical examiner examined that body thoroughly. He didn't find a single mark on the victim's hands. Why? Because he wasn't punching this defendant, that is a lie,

3

a lie that he's concocted to try to justify his actions. Don't believe it, ladies and gentlemen.

¶ 13　　　　　　　　　　　　　　　　* * *

¶ 14　　We already talked about there's no wounds. *** [T]here was little itty-bitty scratches, and those were meticulously marked by the medical examiner. That tells you when I asked him was there anything on his hands or any other injuries? No. He was carefully and consistently going through that body looking, and he had nothing. Why? Because he's not the one who is attacking this defendant. That's a lie.

¶ 15　　　　　　　　　　　　　　　　***

¶ 16　　*** That's not an unreasonable self-defense, they have not proven that. Plus, it's not supported by the physical evidence, just like the physical evidence doesn't support this second proposition, that the defendant acted under a sudden and intense passion resulting from serious provocation by the deceased, because the physical evidence shows that this defendant is the one whose hands were bleeding that was throwing the punches that started the fight, not the victim, because the victim -- Dushanti, again, has no marks from attacking this defendant. The victim was on the ground begging for his life. And they have to prove these by a preponderance of the evidence. They haven't proven either one of these propositions.

¶ 17　　　　　　　　　　　　　　　　* * *

¶ 18　　You have a medical examiner who has no skin in this game. He doesn't know anybody. His job was to take notes and look at things. The only injury is a black

eye that the medical examiner explains is because Dushanti's skull gets broken. There's no other injuries here, there's no other injuries to the rest of his body. It also includes there are no wounds on the victim's hands from punching somebody. And anybody who has ever punched someone or got into a fistfight where it's more than just one punch, you know you're bleeding, you get cut because you're hitting bone, so that isn't true either."

¶ 19    The jury found Smith guilty of first-degree murder. The court denied his motion for a new trial and sentenced him to 48 years in prison.  Smith now appeals.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, Smith argues that (1) the prosecutor's improper remarks in closing argument denied Smith a fair trial; (2) defense counsel should have exercised a peremptory challenge to exclude a juror who initially said she thought she could not decide the case impartially; and (3) this court should reduce the conviction to second degree murder.

¶ 22    Smith concedes that his attorney failed to object to the prosecutor's remarks in closing argument. He asks us to address the issue as plain error. "In closing, the prosecutor may comment on the evidence and any fair, reasonable inferences it yields." *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005).  "At some point, however, the inference asked to be drawn will be unreasonable enough that the suggestion of it cannot be justified as a fair comment on the evidence but instead is more akin to the presentation of wholly new evidence to the jury, which should only be admitted subject to cross-examination, to proper instructions and to the rules of evidence." *United States v. Vargas*, 583 F.2d 380, 385 (7th Cir. 1978). "Whether statements

made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*. *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007).

¶ 23    During closing argument, the prosecutor said, "when I asked [the medical examiner] was there anything on his hands or any other injuries? No. He was carefully and consistently going through that body looking, and he had nothing." The prosecutor did not ask the medical examiner about "anything on his hands." The prosecutor did not ask the medical examiner whether the autopsy showed that Hassell had, or had not, punched anyone in the face in the hours before his death. Instead, the prosecutor relied on the inference he sought to draw from the one-word response to the question, "Did you find any wound or injuries anywhere else on the body?" The prosecutor then added her own testimony: "anybody who has ever punched someone or got into a fistfight where it's more than just one punch, you know you're bleeding, you get cut because you're hitting bone."

¶ 24    In *People v. Linscott*, 142 Ill. 2d 22 (1991), the prosecutor told the jury the evidence showed a non-secretor raped the victim, when the expert only stated that rape by a non-secretor might explain the blood comparison test results, and several other fairly likely possibilities would have led to the same test results. Our supreme court reversed Linscott's conviction. In *People v. Daugherty*, 43 Ill. 2d 251 (1969), the prosecutor argued that the victim of the defendant's sexual acts "could now be considered a 'passive homosexual', [and] 'he will always be weak.' " *Daugherty*, 43 Ill. 2d at 255. Our supreme court found the argument improper because no evidence supported the claims, but the court found no prejudice. In *People v. Gonzalez*, 24 Ill. App. 3d 259, 264 (1974), the prosecutor argued, "there was no way to get fingerprints off an aluminum foil packet." The appellate court found the remark improper but not prejudicial.

6

¶ 25    Like the remarks unsupported by the evidence in *Linscott*, *Daugherty*, and *Gonzalez*, we find the remark here improper. Our supreme court in *Wheeler*, "reaffirm[ed] our intolerance of prosecutorial misconduct." *Wheeler*, 226 Ill. 2d at 122 We agree with the conclusions voiced by commentator Michael Cicchini: "[D]espite the prosecutor's supposed role as 'minister of justice,' rampant prosecutorial misconduct in closing argument still exists. ***

¶ 26    Prosecutors abuse the closing argument process for two primary reasons. First, they know that improper arguments are highly effective, stirring jurors' emotions and inviting them to convict for reasons other than proof beyond a reasonable doubt. Second, and equally important, prosecutors have learned that this form of misconduct is virtually risk free: the difficulty defense lawyers face in quickly identifying and immediately responding to improper arguments typically results in the prosecutor's misconduct going unchecked and the State gaining an illegal advantage without repercussion. Moreover, even when the defense lawyer is able to quickly identify and object to the misconduct, doing so may cause more harm than good. Further, the available remedies are often ineffective." (Emphasis omitted) Michael D. Cicchini, *Combating Prosecutorial Misconduct in Closing Arguments*, 70 Okla. L. Rev. 887 (2018), https://digitalcommons.law.ou.edu/olr/vol70/iss4/4 at 888-89.

¶ 27    Improper remarks amount to plain error if the evidence is closely balanced and the remarks "severely threaten[] to tip the scales of justice" against a defendant. *People v. Herron*, 215 Ill. 2d 167, 187 (2005); see *People v. McCoy*, 378 Ill. App. 3d 954, 964-66 (2008). In *Herron*, our supreme court held that "the plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness

of the [*728] evidence." *Herron*, 215 Ill.2d a6 186-87. Under the first prong, the defendant must prove "prejudicial error," by showing that there was both plain error and "the [***16] evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Id.* at 187. Under the second prong, the defendant must prove that there was plain error and that "the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id*. Prejudice to the defendant is presumed because of the importance of the right involved, "*'regardless* of the strength of the evidence.'" (Emphasis in original.) *Herron*, 215 Ill. 2d at 187 (quoting *People v. Blue*, 189 Ill. 2d 99, 138, 724 N.E.2d 920, 244 Ill. Dec. 32 (2000)). In both instances, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 187. Here, we find the evidence closely balanced on the issue of whether Smith acted under serious provocation, and especially in light of *People v. Van Dyke*, 2020 IL App (1st) 191384, ¶ 14, we also find the evidence closely balanced of whether Smith unreasonably believed he needed to act in self-defense.

¶ 28    We note that the prosecution presented no coherent explanation for Smith's acts to contradict Smith's testimony that he reacted when his friend tried to rob him. If Smith meant to kill Hassell before meeting up with him, it made no sense to come unarmed to a fight with a man known to carry a gun. It also made no sense for Smith to bring witnesses with him. The prosecutor's unsworn statement about the effect of punching Smith goes to the heart of the defense and may have swayed the jury to find Smith guilty first-degree murder.

¶ 29    The State contends the victim's utterance of the word "please" renders the evidence as to Smith's mental state overwhelming. We disagree. As we have already found, it added to the

8

quantum of evidence which, when viewed in the light most favorable to the State, required us to affirm Smith's conviction on sufficiency grounds. However, our supreme court has explicitly cautioned that sufficiency and closeness are different questions. *People v. Sebby*, 2017 IL 119445, ¶ 60 (first-prong plain error "does not involve the sufficiency of close evidence but rather the closeness of sufficient evidence."). Though the evidence was sufficient (applying a highly deferential standard of review), we find the competing inference here strong enough on both sides to conclude the sufficient evidence was close. *Id.*, ¶¶ 61-63 (where both "versions" of the events are credible, neither are fanciful, and only minor inconsistencies cloud both sides, evidence is closely balanced).

¶ 30     Though we have found error in the State's closing argument that requires reversal because the evidence is closely balanced, we join our colleagues in the Fourth District Appellate Court in urging caution before invoking the semantic baggage that comes with alleging prosecutorial "misconduct." *People v. Williams*, 2020 IL App (4th) 180554, ¶¶ 73-5 (distinguishing between a prosecutor who commits error and one whose actions arise to the level of outright misconduct). We do not draw this distinction to diminish the State's role in ensuring every defendant receives a fair trial; we do so only to emphasize that most errors – even many reversible errors – are the product of mistakes, not misconduct.

¶ 31     Here, we do not find misconduct, but instead we find plain error. The plain error requires reversal and remand for a new trial. Because of our resolution of the first issue, we need not address Smith's other arguments.

¶ 32          III. CONCLUSION

9

¶ 33    The prosecutor's unsworn expert testimony that the medical record proved Hassell did not punch Smith deprived Smith of a fair trial and amounted to plain error. Accordingly, we reverse and remand for a new trial.

¶ 34    Reversed and remanded.

¶ 35    JUSTICE COGHLAN, dissenting:

¶ 36    The plain error doctrine is a narrow and limited exception to the general waiver rule. *People v. Herron*, 215 Ill. 2d 167, 177 (2005). Plain error allows a reviewing court to consider unpreserved error where "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or where "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatowski*, 225 Ill. 2d 551, 565 (2007) (citing Herron, 215 Ill. 2d 167, 186-87 (2005)).

¶ 37    The majority concludes that the "prosecutor's remarks exceeded the bounds of fair inference from the evidence, and in this case with closely balanced evidence, the remarks amount to plain error." I disagree for two reasons. First, the evidence shows that defendant punched the victim, overpowered him, wrestled the gun away from him, and shot him from at least two and a half to three feet away while the victim pleaded for his life. The evidence also shows that when the defendant shot and killed the victim, their physical struggle had already ended. I do not consider the evidence in this case to be closely balanced. Second, viewing the prosecutor's one isolated comment in the context of the closing arguments as a whole, her comment did not rise to the level of reversible error.

10

¶ 38    "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. This inquiry involves assessing the evidence of the charged offense along with any evidence regarding witnesses' credibility. *Id.*

¶ 39    Defendant's childhood friend, Donald Hall, testified that defendant and the victim began "scuffling in the alley." The defendant "won the tussle and he was getting up," holding the pistol that had previously been in the victim's waistband. As defendant stood up with the pistol, the victim was "[a] couple feet" away on the ground. Defendant "pointed [the gun] at [the victim]" and the victim, who was still on the ground, begged, "please." Donald Hall turned away and heard a gunshot as he ran toward his car. Moments later, defendant ran up and got into the car, where he began frantically looking for his cell phone and "wiping [the gun] off with a towel." After the shooting, defendant "threw [the gun] in Lake Michigan."

¶ 40    Hall's observations are corroborated by the pathologist, who testified that at the time the victim was shot, the gun was "at least two and a half to three feet away, but whether it was 10 or 20 feet, you can't tell. But it was not touching the skin, and it was not up close and personal." The pathologist also confirmed that there were no other injuries to the victim's body other than "some abrasions or scratches on the upper and lower lips" and a gunshot wound to the head.

¶ 41    With respect to defendant's injuries, Ruby Lockhart testified that defendant's hands were bleeding when he returned to the car and defendant admitted to punching the victim five to ten times. Defendant testified that he was injured by "the struggle," but admits he never sought

11

medical treatment for his injuries. When he turned himself into the police five days after the shooting, he had no apparent injuries.

¶ 42    In arguing that the evidence is closely balanced, defendant relies on his own testimony that the victim, who was six to eight inches shorter than him, initiated the confrontation, that multiple witnesses heard some struggle or commotion in the alley, and that physical evidence was strewn about the alley. Regardless of who initiated the confrontation and whether defendant and the victim were engaged in a fistfight at some point, shooting an unarmed man from at least two feet away while he knelt on the ground pleading for his life was disproportionate to any perceived threat or provocation from the unarmed victim. See *People v. Austin*, 133 Ill. 2d 118, 127 (1989) (holding that mutual combat did not apply where "defendant shot and killed an unarmed victim" and at most, "the victim provoked defendant by engaging in a 'fairly even' fistfight for 30 to 40 seconds"); *People v. Thompson*, 354 Ill. App. 3d 579, 589-90 (2004) (finding that defendant's response was disproportionate to the provocation where he shot an unarmed victim twice in the back, with the final shot delivered when the victim was laying on the ground); *People v. Sutton*, 353 Ill. App. 3d 487, 496 (2004) (finding that "there is no mutual combat where the manner in which the accused retaliates is out of all proportion to the provocation, particularly where homicide is committed with a deadly weapon.").

¶ 43    Relying on *People v. Van Dyke*, 2020 IL App (1st) 191384, the majority also concludes that the evidence in this case is closely balanced concerning "whether Smith unreasonably believed he needed to act in self-defense." Notably, defendant has abandoned his self-defense theory on appeal and, as discussed, the evidence of defendant's guilt is overwhelming.

12

Moreover, the court's holding in Van Dyke did not involve a closely balanced analysis or any discussion of self-defense. See *Van Dyke*, 2020 IL App (1st) 191384, ¶¶ 1, 95 (noting that the case "involves the denial of access to the media in a criminal case").

¶ 44      As to the prosecutor's inaccurate but isolated comment during closing argument, prosecutors have "wide latitude in the content of their closing arguments" and when considering whether statements are reversible error, they "must be considered in the context of the closing argument as a whole." *People v. Evans*, 209 Ill. 2d 194, 225 (2004). "A reviewing court will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." *People v. Perry*, 224 Ill. 2d 312, 352 (2007) (citing *People v. Johnson*, 218 Ill. 2d 125, 141 (2005)). The weight of the evidence is relevant in determining whether the remarks prejudiced the defendant and the closer the evidence is, the greater likelihood of prejudice. *People v. Linscott*, 142 Ill. 3d 22, 40 (1991).

¶ 45      Defendant asserts that the prosecutor improperly argued that the victim did not have any injuries on his hand because "[n]either the State nor the defense ever asked the pathologist about the lack of injuries on [the victim's] hands." This argument ignores the fact that the pathologist testified that other than "some abrasions or scratches on the upper and lower lips," he "[d]id [not] find any wound or injuries anywhere else on the [victim's] body." The prosecutor's argument that the victim did not have any injuries on his hand was a reasonable inference to be drawn from this testimony. See *People v. Jackson*, 2020 IL 124112, ¶ 82 (prosecutors "may comment on the evidence and on any fair and reasonable inference the evidence may yield, even if the suggested inference reflects negatively on the defendant").

13

¶ 46          Defendant further asserts that it was improper for the prosecutor to argue that "anybody who has ever punched someone or got into a fistfight where it's more than just one punch, you know you're bleeding, you get cut because you're hitting bone."[1] Although I agree that this statement was not a reasonable inference based on the evidence, "[a] single misstatement [of the evidence] does not necessarily deprive a defendant of a fair trial." *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 56.

¶ 47           Like one of the comments considered by our supreme court in *People v. Cisewski*, 118 Ill. 2d 163, 177-78 (1987), the prosecutor's comment in this case was "brief and unrepeated." As in Cisewski, the prosecutor's comment here would "have been best left unsaid." *Id.* at 178. But in light of the strong evidence of defendant's guilt, the record does not support the notion that "the verdict would have been different absent this single isolated remark." *Id.* Defendant is similarly unable to establish that this isolated remark was "so prejudicial that real justice was denied or that the verdict resulted from the error." See *Perry*, 224 Ill. 2d at 352 (citing *Johnson*, 218 Ill. 2d at 141). As outlined above, there was substantial evidence that the victim and the defendant were not engaged in mutual combat at the time the defendant shot him, execution style, as he begged for his life. See, e.g., *People v. Adams*, 2012 IL 111168, ¶ 23 (prosecutor's improper statements did not amount to reversible error where they "were not of a sort likely to inflame the passions of the jury" and where the evidence was not closely balanced); *People v. Hayes*, 409 Ill. App. 3d 612, (2011) (finding that the case "was not [] closely balanced" and

---

[1] Had the prosecutor simply preceded her argument by saying "wouldn't you expect" that "anybody who has ever punched someone or got into a fistfight where it's more than just one punch, you know you're bleeding, you get cut because you're hitting bone," it would have been a completely reasonable inference based on the pathologist's testimony.

"defendant has failed to show that the isolated comment was material to his conviction' where evidence of mutual combat was not strong).

¶ 48    The majority relies on *People v. Daugherty* and *People v. Gonzalez*, two cases in which the court held that reversal was not warranted because the defendant was not prejudiced by the prosecutor's improper statements in, reaching the exact opposite conclusion in this case. See *Daugherty*, 43 Ill. 2d 251, 256 (1969); *Gonzalez*, 24 Ill. App. 3d 259, 264 (1974). The defendant in *Daugherty* was convicted of taking indecent liberties with a child. *Daugherty*, 43 Ill. 2d at 252. On appeal, he challenged the prosecutor's statements during closing argument that "in his opinion the prosecuting witness could now be considered a 'passive homosexual,' 'he will always be weak'; that the defendant 'got' all three boys, [and] and that 'he would have got anybody he could get his hands on.' " *Id.* at 255. The court held that the "comments were improper" and not supported by the evidence, but they "[did] not warrant reversal of judgment" because an objection to each was sustained and the jury was instructed to disregard any statements of counsel not supported by the evidence. *Id.*

¶ 49    Because defense counsel failed to object to the prosecutor's argument in this case, the jury was not immediately instructed that this statement was improper. However, before the arguments began, the trial court preemptively cautioned the jury: "Anything that the lawyers say in closing arguments is not to be considered as evidence, and I go that one step further *** [a]nything that the lawyers say in closing arguments that conflicts with your individual recollection of the evidence, should be disregarded." And within minutes after the arguments had concluded, the jury was again admonished that "arguments are [not] evidence *** any

15

statement or argument made by the attorneys which is not based on the evidence should be disregarded."

¶ 50    In *Gonzalez*, the defendant was convicted of possession and delivery of a controlled substance. *Gonzalez*, 24 Ill. App. 3d at 260. The prosecutor argued that "there was no way to get fingerprints off an aluminum foil packet" in response to defense counsel's comment regarding an absence of fingerprint analyses on the foil packets seized. *Id.* at 264. The court found that while the prosecutor's statement was "not based on an evidentiary foundation and was therefore improper," it did not constitute reversible error because it was not "a material factor in the conviction" nor did it "result[] in substantial prejudice to the accused such that without the remark[] the verdict would probably be different." *Id.* Just as in *Daugherty* and *Gonzalez*, defendant here cannot establish that he was prejudiced by the prosecutor's isolated remark or that absent the remark, the verdict would probably be different.

¶ 51    Because the evidence in this case is not closely balanced, defendant cannot establish that his claim is subject to review under first prong plain error or that the prosecutor's isolated remark constitutes reversible error. Accordingly, I respectfully dissent and would affirm the jury verdict finding defendant guilty of the murder of Dushanti Hassell.