NOTICE
Decision filed 05/30/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220202-U

NO. 5-22-0202

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 20-CF-17 |
| | ) | |
| JEFFERY CHISM, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates concurred in the judgment.
Presiding Justice Vaughan dissented.

**ORDER**

¶ 1   *Held*: The trial court's denial of the defendant's request for appointment of new counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), is reversed where the preliminary *Krankel* hearing revealed appointed counsel's possible neglect of the case. We remand for the appointment of new counsel to represent the defendant on the merits of his posttrial claims that his defense counsel was ineffective. Also, the trial court abused its discretion in denying defense counsel's motion to withdraw where there was an irreparable breakdown in communication between counsel and the defendant. Thus, we also remand for a new sentencing hearing after new counsel has been appointed.

¶ 2   In January 2020, the State charged the defendant, Jeffery Chism, with one count of unlawful manufacture or delivery of a controlled substance with the intent to distribute, one count of unlawful use of weapons by a felon, one count of violation of sex offender registration, and one count of unlawful possession of a controlled substance. During the jury trial, the defendant made

1

repeated requests that his appointed counsel be discharged based on a breakdown in communication. However, the trial court denied those requests, finding that the issues that the defendant had with his counsel related to trial strategy, that the defendant's requests were attempts to obstruct the proceedings, and that the defendant had not made a clear and unequivocal request to proceed *pro se*. The defendant was ultimately convicted of unlawful manufacture or delivery of a controlled substance and unlawful possession of a controlled substance but found not guilty of unlawful use of weapons by a felon.[1]

¶ 3     Prior to sentencing, the defendant raised, *pro se*, issues of ineffective assistance of trial counsel and requested new counsel be appointed to present the issues for him. After a hearing on the ineffective assistance allegations that was conducted pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), the trial court found that the issues raised related to trial strategy, and the allegations were conclusory and not supported by a factual basis. Consequently, the court did not appoint new counsel to bring the defendant's ineffective assistance of counsel claims. Thereafter, in March 2022, the defendant's appointed counsel filed a motion to withdraw as his counsel, noting that the defendant had filed a complaint with the Illinois Attorney Registration and Disciplinary Commission (ARDC) against her, and she was unable to effectively communicate with him to prepare a posttrial motion or for a sentencing hearing. The court denied the motion, finding that the issues related to trial strategy. Subsequently, the court sentenced the defendant to 14 years' imprisonment. The defendant now appeals, arguing that the trial court erred in not appointing independent counsel and not conducting a full hearing on his *pro se* ineffective assistance of trial counsel claims. He also claims that the trial court abused its discretion in denying his counsel's

---

[1]On September 30, 2021, the charge for failure to register as a sex offender was severed from the remaining charges by the parties' agreement. This charge was ultimately dismissed.

motion to withdraw. For the reasons set forth herein, we reverse the judgments of the trial court and remand with directions.

¶ 4                                    I. BACKGROUND

¶ 5      On January 10, 2020, the State charged the defendant with one count of unlawful manufacture or delivery of a controlled substance with the intent to distribute, one count of unlawful use of weapons by a felon, one count of violation of sex offender registration, and one count of unlawful possession of a controlled substance. At the December 2021 jury trial on all the charges except for the violation of sex offender registration, the following evidence was presented. Travis Heck, a master sergeant with the Illinois State Police (ISP), testified that he was assigned to assist with the execution of a search warrant at 609 East Snider Street, Carbondale, Illinois, at approximately 6 a.m. on January 9, 2020. He was told that the defendant was a person of interest, and there were potentially six other occupants residing at this residence. His team entered the residence through the back door and moved through the residence to secure the occupants inside. Heck proceeded to the northwest bedroom and located the defendant lying in the bed in that room. The defendant was the only person in this bedroom. Heck could not recall if the defendant was awake at the time he entered the bedroom. The search was not recorded.

¶ 6      Kenneth Sneed, who was employed by the Southern Illinois Enforcement Group, a multiagency unit that investigated drug offenses, testified that he started investigating the defendant in December of 2019 for illegal drug activity occurring inside the home located at 609 East Snider Street. In his investigation, he determined that the defendant lived at this address; he was also aware of two other individuals living in the home. However, the defendant was the only one under investigation. Sneed ultimately obtained a search warrant for the residence. The search warrant was executed on January 9, 2020. Three people were found in the residence, the defendant,

3

Claude Parnell, and Jeremy Brown; and one person, Pulaski Graham, was inside a shed located on the property.

¶ 7    There were various items found in the bedroom in which the defendant was located. The officers found a small bag containing what appeared to be cannabis, a composition notebook with "Mr. Chism's Administration Bank of Earth 1976" written at the top, a white plate with suspected cocaine residue on it, a razor blade on top of the plate, a digital scale to the left of the plate, a flip phone, and a box of business cards with "Chism, 2 of 2" written on the box. There were also approximately 10 business cards held together with a rubber band, and each card had a crack rock taped to it. The business cards said, "Coming soon to website truuwear.com" and contained the defendant's phone number. When Sneed looked up the website "truuwear.com," he noted that it did not exist yet.

¶ 8    Under the mattress, a wallet was discovered; the wallet contained a large amount of money, State of Illinois identification (ID) belonging to the defendant, and three additional business cards with crack rocks taped on them. The address on the ID was 609 East Snider Street, and it was issued on August 7, 2019, approximately six months before the execution of the search warrant. In the closet, a partial box of 9-millimeter ammunition was discovered on the top shelf. Also, a temporary State of Illinois photograph ID with the defendant's name on it and mail with the defendant's name and the 609 East Snider Street address were found on the bedroom floor. There were also other personal belongings in the room that indicated it was lived in.

¶ 9    After searching the bedroom, Sneed read the defendant his *Miranda* rights and then questioned him about the items found in the bedroom. When questioned about his living arrangements, the defendant indicated that he sometimes stayed at the residence while other times he stayed at a hotel. He admitted that everything in the bedroom belonged to him and stated that

4

he paid $200 per month to his aunt for staying there. He also admitted that he was a cocaine dealer, that the cocaine was his, and that the business cards were his way of doing business. However, when asked further questions about his cocaine business, he stopped talking to Sneed. Sneed did not know if the other individuals found at the residence were interviewed. There was no video or audio recording of the search or the defendant's interview.

¶ 10    Thanarat Viriyakul, an ISP forensic scientist, testified that he tested the contents of six of the plastic bags recovered from the bedroom, and they tested positive for cocaine; he noted that there was 1.1 grams of cocaine. Thomas Fisher, the sales manager at the Carbondale Staples store, testified that on November 7, 2019, the defendant ordered 1000 business cards to be printed at the store (two boxes of 500 cards). He then made another order of 500 business cards on December 14, 2019. Fisher noted that it was a regular business practice to write on the box the customer's last name followed by "1 of 2 or 1 of 3," depending on how many boxes ordered. Fisher acknowledged that the store did not have video surveillance, and it was possible that another individual gave the defendant's contact information for the order; he had no way to verify that the defendant actually placed the order.

¶ 11    The defendant then announced his decision not to testify, and the attorneys presented their closing arguments. After deliberations, the jury found the defendant guilty of unlawful manufacture or delivery of a controlled substance with the intent to distribute and unlawful possession of a controlled substance. However, the jury found him not guilty of unlawful use of weapons by a felon.

¶ 12    On January 20, 2022, the trial court held a preliminary *Krankel* hearing on the defendant's ineffective assistance of counsel claims that he had raised in a previous status hearing. At the preliminary *Krankel* hearing, the defendant indicated that his counsel failed to object to improper

5

use of evidence at trial; she failed to investigate and perform certain pretrial functions, including subpoenaing the confidential informant who gave information to the agents during the investigation; she did not file a motion to quash his arrest and suppress evidence of the search; and she never informed the jury that he was homeless and that 609 East Snider Street was merely his mailing address and not his residence. He then indicated that he did not want counsel to represent him at his sentencing hearing.

¶ 13    In response, counsel noted that if the trial court wanted to question her about the facts and circumstances surrounding the claims, she would be willing to set forth the pretrial preparation and advice that she had given to the defendant, even though he was reluctant to accept her advice or guidance. She then asked the court to rely on its objective assessment of her trial performance. She noted that the defendant was found not guilty on one charge, so evidently, she was really effective on that one claim, even though the defendant contended that she was ineffective on the other two counts. She then noted that the defendant's contentions did not make any logical sense as the not guilty verdict showed that she had provided effective representation.

¶ 14    As for the defendant's argument about the confidential informant, counsel noted that there was a confidential informant involved in the case, but the information from the informant did not necessarily pertain to the charges that the defendant was convicted of; she noted that the informant claimed to have made undercover covert purchases of narcotics from the defendant. Although this information led to the search warrant, the defendant was never charged with those deliveries of controlled substances; instead, he was charged with what was found after the search warrant. She then noted that the defendant did not understand that the charges that were actually filed were "not something that the confidential informant would have been called to testify to," and in a way, the State had already "cut [him] a break" by not filing those delivery charges.

6

¶ 15   Counsel then argued that the defendant had not met the minimum standard to show that she was ineffective. Counsel noted that the trial court was aware of the difficult relationship that she and the defendant had, given his outbursts at trial, and his disdain for anything that she said during the trial. She then requested that, if the court granted new counsel, an attorney outside the Jackson County Public Defender's Office be appointed as the defendant had also filed an ARDC complaint against another attorney in that office (his appointed attorney before her). She also noted that, on one occasion when the defendant was in the office for pretrial preparation, he became violent and was asked to leave the office. She noted that she was very close to pushing the panic button to have him removed. She stated that the defendant was not an easy client, and it was difficult to deal with him.

¶ 16   The defendant then responded that the State entered over 13 different exhibits into evidence, and his counsel did not enter any exhibits on his behalf, even the one or two exhibits that he requested be introduced into evidence. He indicated that he felt that counsel was not acting in his best interests when representing him. He also noted that she did not call any witnesses to contest the State's argument that he lived at 609 East Snider Street, and it was not in his best interests that the violation of sex offender registration charge was severed because that kept the jury from hearing that 609 East Snider Street was not his residence.

¶ 17   In further response, counsel clarified that the defendant wanted her to call the officer who handled the sex offender registration for the Carbondale Police Department as a witness and that the exhibits that he wanted her to admit were the search warrant and the probable cause statement.

¶ 18   After hearing the arguments, the trial court denied the defendant's request for the appointment of independent counsel to further explore his ineffective assistance of counsel claims. The court found that the issues raised by the defendant related to trial strategy regarding evidence,

7

witnesses called, and arguments and objections made. The court also found that the other allegations were conclusory and were not supported by any additional factual basis. The court noted that it observed counsel's performance during the trial, and the defendant was found not guilty on one of the charges. Thus, the court did not appoint new counsel to further investigate the defendant's *pro se* claims.

¶ 19    On March 8, 2022, prior to the sentencing hearing, the defendant's counsel filed a motion to withdraw, arguing that she was unable to effectively communicate with the defendant to prepare for the posttrial motion or for the sentencing hearing. In the motion, counsel noted that the defendant had filed an ARDC complaint against her. At the hearing on the motion, counsel noted that the defendant sent a letter to the ARDC where he claimed that she was ineffective and alleged a set of circumstances that did not occur. She noted that he had written a letter to everyone involved in his case and that he had also filed an ARDC complaint against his previously appointed attorney. Thus, she requested that the entire public defender's office be removed from his case. The court then denied the motion, noting that the filing of an ARDC complaint by itself did not necessarily mean that a motion to withdraw should be granted. The court noted that, in denying the motion, it considered the arguments contained in the motion as well as what transpired throughout the duration of the case. The court found that the issues related to trial concerns, and there was no reason to appoint different counsel to investigate those concerns.

¶ 20    On March 24, 2022, the trial court sentenced the defendant to 14 years' imprisonment on the unlawful manufacture or delivery of a controlled substance with the intent to distribute conviction. The court found that the unlawful possession conviction merged as a lesser-included offense. The defendant appeals.

¶ 21                                    II. ANALYSIS

¶ 22                              A. *Krankel* Hearing

¶ 23    The defendant first argues that the trial court erred in failing to appoint replacement counsel in response to his complaints about defense counsel's performance. We agree.

¶ 24    Pursuant to *Krankel*, and its progeny, when a defendant presents a colorable *pro se* posttrial claim of ineffective assistance of counsel, the trial court must conduct an adequate preliminary inquiry into the factual basis for defendant's claims to determine whether appointment of new counsel is warranted. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). If the trial court determines that the claims lack merit or pertains only to matters of trial strategy, the court need not appoint independent counsel to argue defendant's claim. *People v. Jolly*, 2014 IL 117142, ¶ 29. "A claim lacks merit if it is conclusory, misleading, or legally immaterial or does not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 40. However, if the examination reveals "possible neglect" of the case, independent counsel should be appointed, and a full evidentiary hearing on defendant's claims should be held. *Moore*, 207 Ill. 2d at 78. The appointed counsel can independently evaluate the *pro se* claims and avoid the conflict of interest that defendant's trial counsel would experience in trying to justify his or her actions contrary to defendant's position. *People v. Roddis*, 2020 IL 124352, ¶ 36.

¶ 25    Although the trial court is not required to automatically appoint new counsel when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, it must conduct an adequate inquiry into defendant's *pro se* allegations of ineffective assistance of counsel. *Moore*, 207 Ill. 2d at 77-78. In conducting this initial inquiry, the trial court may (1) ask defense counsel to answer questions and explain the facts and circumstances relating to the claim, (2) briefly discuss the claim with defendant, or (3) evaluate the claim based on its observation of defense

9

counsel's performance at trial and the insufficiency of defendant's allegations on their face. *Id.* at 78-79.

¶ 26    Where the trial court properly conducted a *Krankel* inquiry and reached a determination on the merits of defendant's *Krankel* motion, we will reverse only if the trial court's ruling was manifestly erroneous. *People v. McCall*, 2021 IL App (1st) 172105, ¶ 54. A ruling is manifestly erroneous where the error is clearly evident, plain, and indisputable. *Id.*

¶ 27    In this case, the defendant is not challenging the adequacy of the preliminary *Krankel* hearing. Instead, the defendant argues that the trial court's decision to not appoint him independent counsel was manifestly erroneous where the preliminary *Krankel* hearing revealed possible neglect of the case. Specifically, at the preliminary *Krankel* hearing, the defendant claimed that his counsel was ineffective because she failed to investigate and perform necessary pretrial functions, failed to file motions to quash his arrest and to suppress evidence discovered during the search of the house at 609 East Snider Street, she never explained his homelessness to the jury, and she did not submit any exhibits into evidence. The defendant also raises, in his appellant brief, additional claims of neglect based on the record that were not raised at the preliminary *Krankel* hearing. However, our decision will only focus on the claims of neglect that were raised in and considered by the trial court.

¶ 28    At the preliminary *Krankel* hearing, the defendant indicated that he asked his trial counsel to subpoena the confidential informant who gave the statement to the agents that led to the search warrant at 609 East Snider Street. However, counsel never followed up on that, even though his previous counsel had indicated (before he was replaced by his trial counsel) that he intended to file

10

a motion for disclosure of the confidential informant.[2] Also, the defendant indicated that his counsel never informed the jury that he was homeless, and that 609 East Snider Street was his mailing address and not his residence.

¶ 29    During the jury trial, the State and the State's witnesses repeatedly referred to the bedroom where the defendant was located as the defendant's bedroom while defense counsel offered no evidence, or any explanation for her failure to offer such evidence, to support the defendant's claim that the residence was merely the defendant's mailing address. The defendant wanted counsel to present testimony from a Carbondale sex offender registration officer that his registered address was not 609 East Snider Street. Instead, the defendant's registered address was a local motel because he was homeless. There was no indication in the record that an investigation was conducted into whether the defendant actually lived at the motel listed on the sex offender registry. If evidence was available that the defendant was not residing at 609 East Snider Street during the time of the search, then the defendant could have argued that he did not own or possess the incriminating items found in the bedroom (that he had no control over the items found there). However, no evidence was offered on this issue, and no such argument was made. Consequently, there was no evidence presented to rebut the evidence that the defendant lived at this residence, and that it was his bedroom where the crack rocks and other items were found.

¶ 30    At the preliminary *Krankel* hearing, the defendant's counsel did not address the allegation that she failed to follow up on the defendant's claim that he did not live at 609 East Snider Street. Instead, she argued that the defendant failed to meet the minimum standards to demonstrate that he should have been appointed new counsel. She did not indicate that she actually had followed

---

[2]This fact is ignored by the dissent, who decides, without any evidentiary hearing, that the informant would not have been disclosed.

up on his claim and found information to suggest that the defendant lived at 609 East Snider Street, or if she did not follow up on the claim, she offered no explanation for her failure to do so. Moreover, she did not offer an explanation as to why, if her decision was based on trial strategy, this evidence could not have been offered in a way to minimize any prejudicial effect.

¶ 31 The issue here is whether the defendant's *pro se* allegations could support a claim of ineffective assistance of counsel and would support appointing new counsel to investigate the allegations for purposes of assessing trial counsel's representation. After reviewing the record, we believe that the claims here were sufficient to place the trial court on notice that there was a need for the appointment of alternate counsel. Thus, we conclude that the trial court erred by failing to appoint substitute counsel to independently investigate and present the defendant's ineffective assistance of counsel claims after it conducted its preliminary *Krankel* hearing.

¶ 32 B. Defense Counsel's Motion to Withdraw

¶ 33 Absent a showing of good cause, the decision to deny an attorney's motion to withdraw lies within the sound discretion of the trial court. *People v. Royark*, 215 Ill. App. 3d 255, 266 (1991). A court's decision is an abuse of discretion where the ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Munoz*, 398 Ill. App. 3d 455, 479-80 (2010).

¶ 34 After carefully reviewing the record, we conclude that the trial court abused its discretion in denying counsel's motion to withdraw. In denying the motion to withdraw, the trial court noted that the filing of an ARDC complaint itself did not necessarily guarantee that a motion to withdraw would be granted and that the defendant's arguments addressed trial concerns that occurred throughout the case. However, we note that the request to withdraw was not entirely based on the fact that the defendant filed the ARDC complaint against his counsel. Instead, the record

12

demonstrates that the communication between counsel and the defendant had completely broken down to the point that they were unable to communicate effectively, and there was little hope that it could be repaired.

¶ 35    Throughout the jury trial, the defendant repeatedly complained about how he believed that his counsel did not want to represent him, she refused to offer certain evidence on his behalf, she shut down conversations that he wanted to have with her about her trial performance, and she was not engaged in his case and did not have his best interests at heart. In response, counsel acknowledged that there was a breakdown in communication between her and the defendant. However, the trial court denied his requests to proceed *pro se*, finding that the defendant's requests were an attempt to obstruct the proceedings and not clear and unequivocal requests to proceed *pro se*. Also, during the preliminary *Krankel* hearing, counsel noted that the trial court was well aware that she and the defendant had a difficult relationship based on his "outbursts" at trial. She believed that the defendant had a clear disdain for basically anything she said during the trial and that their relationship had broken down. She noted that he was not an easy client, and that they even had one incident in her office where she was close to pushing the panic button to have him removed from the premises. Thus, it was clear that the defendant and his counsel had a contentious relationship throughout the course of the trial.

¶ 36    Moreover, at the time of counsel's motion to withdraw, their ability to communicate with each other had not improved. Instead, both counsel and the defendant concluded that they were unable to effectively communicate with each other to prepare for his posttrial motion and for the upcoming sentencing hearing. The defendant's counsel indicated that the defendant had filed an ARDC complaint against her and his previous attorney and also had written letters to everyone involved in the case. Thus, based on the above, we disagree with the reasoning of the dissent, and

13

conclude that the trial court abused its discretion in denying counsel's motion to withdraw as the defendant's counsel where the record revealed that their relationship had deteriorated to the point that they were unable to have a functioning attorney-client relationship.

¶ 37                              III. CONCLUSION

¶ 38    For the reasons stated, the orders of the circuit court of Jackson County denying the defendant's request for appointment of new counsel and denying counsel's motion to withdraw are reversed. The matter is remanded for the appointment of new counsel to represent the defendant on the merits of his posttrial claims that defense counsel was ineffective and take whatever action appointed counsel deems appropriate. See *People v. Lawson*, 2019 IL App (4th) 180452, ¶¶ 54-55. We take no position on the merits of such claims. We also remand for a new sentencing hearing after the defendant is appointed new counsel.

¶ 39    Reversed and remanded with directions.

¶ 40    PRESIDING JUSTICE VAUGHAN, dissenting:

¶ 41    Given the applicable standard of reviews regarding whether the court erred in denying defendant appointment of *Krankel* counsel and trial counsel's motion to withdraw, I cannot agree with the majority's conclusions. I therefore dissent.

¶ 42                              I. *Krankel* Claims

¶ 43    Regarding the court's preliminary *Krankel* ruling, the majority discusses two of defendant's claims, *i.e.*, failure to subpoena confidential informant and failure to investigate homelessness. However, its holding, that the trial court's *Krankel* determination was manifestly erroneous, seems to depend solely on the allegation that trial counsel failed to investigate defendant's homelessness. Accordingly, I address that claim first.

14

¶ 44     At the *Krankel* hearing, defendant contended that trial counsel, Celeste Korando, never informed the jury that defendant was homeless and did not call his registration officer to verify that the Snider Street house was not his residence. Korando clarified that defendant was referring to his sex offender registration officer for the Carbondale Police Department as a witness. The trial court found this issue related to trial strategy.

¶ 45     We only reverse the trial court's determination of defendant's *Krankel* claims if it was manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.* The majority claims that had Korando conducted an investigation into whether defendant actually lived at the Snider Street residence and found evidence that defendant did not reside there during the search, defendant could have argued that he did not own or possess or have control over the incriminating items found in the bedroom. The majority refused to find such actions were matters of trial strategy where Korando did not explicitly state that she investigated the issue or that her decision to not present evidence that the Snider Street residence was not defendant's home was based on trial strategy at the *Krankel* hearing. It is important to note that defendant did not specifically allege that Korando failed to investigate his homelessness; rather, he argued that Korando would not raise the issue of homelessness at trial and refused to call his sex offender registration officer to confirm he was homeless.

¶ 46     Although Korando did not argue the failure to call the sex offender registration officer was an intentional trial strategy, the court was aware that it previously granted Korando's motion to sever defendant's charge for violation of sex offender registry (730 ILCS 150/3(a) (West 2020)), in which Korando argued that information concerning defendant's prior conviction of an offense of a sexual nature would unnecessarily inflame the passions and prejudices of the jurors and preclude a fair trial. The filing of such motion shows Korando's clear intent to avoid calling

15

attention to defendant's sex crimes as a trial tactic. In light of the elements of the offense and evidence presented at trial, such trial strategy was reasonable.

¶ 47    The relevant charges here were possession of a controlled substance and possession with intent to deliver a controlled substance. 720 ILCS 570/401(c)(2), 402(c) (West 2022). Possession may be actual or constructive. *People v. Hodge*, 250 Ill. App. 3d 736, 743 (1993). "Constructive possession exists where there is no actual, personal, present dominion over contraband, but defendant had knowledge of the presence of the contraband, and had control over the area where the contraband was found." *People v. Hunter*, 2013 IL 114100, ¶ 19. "Knowledge *** may be inferred from surrounding circumstances, including the defendant's actions, declarations, or other conduct," which indicate that the defendant knew the contraband existed in the place where it was found. *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002); *People v. Smith*, 288 Ill. App. 3d 820, 824 (1997). "Control is established when the defendant has the capability and intent to maintain dominion and control over the contraband." *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. Because it is often difficult to prove possession by direct evidence, possession is frequently proven by circumstantial evidence. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010).

¶ 48    Here, defendant was lying in the bed of the room where the drugs were found. Defendant was the only person in the room. The drugs were attached to business cards that displayed defendant's name and phone number. Also in the room was mail addressed to defendant with the Snider Street address, as well as a wallet containing 3 of the 13 business cards with the drugs attached and defendant's State of Illinois identification card—which was issued about six months prior to the search and listed defendant's address as the Snider Street address. During his interview, defendant admitted everything in the bedroom belonged to him. He also admitted that he was a cocaine dealer, the cocaine was his, and that his business cards were his way of doing business.

16

¶ 49    Although evidence that defendant did not live at the residence would have disputed the inference of residency based on the mail found and defendant's license, it would not have undermined any of the other evidence concerning control. Defendant need not be a resident of or have control over the premises in which the drugs were found to establish constructive possession. *People v. Givens*, 237 Ill. 2d 311, 335-37 (2010) (stating control of the premises is not necessary and discussing *People v. Schmalz*, 194 Ill. 2d 75, 83 (2000), that found possession although it was established that defendant was a not a resident of the home in which the drugs were found). The drugs being found with defendant's personal effects in a room that only defendant was present in, as well as defendant's admission, gave strong evidence of knowledge and control over the area in which the drugs were found. Given the evidence of control in this case, Korando used sound trial strategy in severing the violation of sex offender registration charge and declining to call defendant's sex offender registration officer to avoid the admission of defendant's previous sex crimes despite losing slight evidence of defendant's residency. The trial court's finding with respect to this claim was therefore not manifestly erroneous.

¶ 50    The other claim mentioned by the majority was defendant's argument that Korando failed to subpoena the confidential informant—who gave an out of court statement—which violated his right to confront and cross-examine his accuser. Korando stated that the confidential information did not directly pertain to the charges for which defendant was found guilty. While the confidential informant made undercover covert purchases of narcotics from defendant, defendant was never charged with those deliveries. Korando averred that she tried to explain to defendant that the confidential informant would not have been called to testify in any capacity regarding the charges the State filed. The court again found this was a matter of trial strategy.

17

¶ 51　One accepted limitation to a defendant's right to confrontation "is the informant's privilege, which allows the government to withhold the identities of persons who provide information to law enforcement agencies." *People v. Rutledge*, 135 Ill. App. 3d 259, 262 (1985). Disclosure of an informant is not automatic upon request. *People v. Deveaux*, 204 Ill. App. 3d 392, 398 (1990). Illinois Supreme Court Rule 412(j)(ii) (eff. Mar. 1, 2001) states: "Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." The determination of whether a confidential informant's identity should be disclosed requires a balance of the strong public policy reason in protecting informants against a defendant's right to prepare a defense. *People v. Chavez*, 327 Ill. App. 3d 18, 34 (2001).

¶ 52　A defendant has the burden to show that disclosure is necessary to prepare his or her defense. *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 35. Generally, disclosure is required "[w]hen an informant is alleged to have participated in, witnessed, or helped to arrange the crime and disclosure will not jeopardize the informant's safety, the privilege will generally give way to a defendant's right to prepare his defense." *People v. Rose*, 342 Ill. App. 3d 203, 206 (2003). On the other hand, "[t]he identity of a confidential informant can be withheld if he is not a participant or a material witness to the essential elements of the offense." *People v. Gales*, 248 Ill. App. 3d 204, 222 (1993); see *Rose*, 342 Ill. App. 3d at 206. Nondisclosure is proper "if 'the issue is one of probable cause, and guilt or innocence is not at stake ***.' " *People v. McBee*, 228 Ill. App. 3d 769, 773 (1992) (quoting *McCray v. Illinois*, 386 U.S. 300, 311 (1967)); see also *People v. Young*, 372 Ill. App. 3d 626, 628 (2007).

¶ 53    Here, the record shows that the confidential informant made controlled purchases of narcotics from defendant, which provided the probable case for the search warrant. Defendant's delivery of narcotics to the informant was not an issue at trial. The charges in this case concerned the drugs found during the search. There is no indication or allegation that the confidential informant was present during the search or defendant's arrest. As such, the confidential informant's knowledge was not relevant to the essential elements of the charged offenses concerning possession on January 9, 2020, and only regarded probable cause for the search. *Young*, 372 Ill. App. 3d at 629; *Gales*, 248 Ill. App. 3d at 224; *Deveaux*, 204 Ill. App. 3d at 398-99; *People v. Taylor*, 2022 IL App (4th) 210748-U, ¶ 43. As such, defendant was not entitled to disclosure of the confidential informant. See *McBee*, 228 Ill. App. 3d at 773. Because the confidential information would have no relevant information regarding the charged offenses, I cannot say counsel was unreasonable in declining to waste time on requesting disclosure. The trial court's finding that defendant's ineffective assistance of counsel claim on this basis meritless was therefore not manifestly erroneous. *Taylor*, 2022 IL App (4th) 210748-U, ¶ 43.

¶ 54    Defendant also claimed the failure to admit the search warrant or probable cause statement into evidence precluded him from proving his innocence or perjury. However, at the hearing, defendant failed to explain how the search warrant or probable cause statement would have allowed him to prove his innocence, especially where the result of both indicated defendant committed the charged offenses. Moreover, admission of the probable cause statement would have provided improper evidence of defendant's prior bad acts of distributing narcotics. As such, finding the failure to admit both documents to be trial strategy was not "clearly evident, plain, or indisputable" error.

¶ 55     On appeal, defendant contends that had *Krankel* counsel been appointed, *Krankel* counsel could have raised that Korando was ineffective for failing to subpoena the confidential informant as a witness to show that the police perjured themselves in obtaining the search warrant. However, we cannot find that the trial court erred in failing to appoint *Krankel* counsel for this claim, or any other claim, that defendant failed to raise during the *Krankel* hearing. Nevertheless, while defendant would be entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 154-55 (1978),[3] upon a substantial preliminary showing that affiant officer knowingly and intentionally made a false statement in the warrant affidavit, defendant does not indicate what statements of the affiant officer was false. His allegations therefore remain conclusory and lack factual detail. See *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 40 ("A [*Krankel*] claim lacks merit if it is conclusory ***.").

¶ 56     While defendant did not clearly delineate all his other claims at the preliminary *Krankel* hearing, he did raise other claims. Of those he raised at the *Krankel* hearing, he contends on appeal that the court should have appointed *Krankel* counsel based on his claims that Korando failed to (1) investigate the case; (2) file motions to quash his arrest and suppress evidence discovered during the search of the Snider Street residence; and (3) submit exhibits despite the State presenting a number of exhibits. However, defendant failed to provide any factual specificity—at the *Krankel* hearing or on appeal—regarding these claims, other than the allegations I reject above. I therefore agree with the court's finding that these claims were conclusory. Because defendant's

---

[3]"When a *Franks* hearing has been granted, the trial court may in its discretion require the production of the informant and/or the police files on the informant for an *in camera* examination or inspection, if under all the circumstances the trial court doubts the credibility of the police officer/affiant with respect to the existence of the informant. Based upon the trial court's findings at the *in camera* examination or inspection, the court may then exercise its discretion in deciding whether to order disclosure of the informant's identity to the defendant." *People v. Vauzanges*, 158 Ill. 2d 509, 520 (1994).

*Krankel* claims were either meritless or pertained to trial strategy, I find the court's decision to deny appointment of *Krankel* counsel was not manifestly erroneous.

¶ 57                    II. Korando's Motion to Withdraw as Counsel

¶ 58    I also disagree that the trial court abused its discretion in denying Korando's motion to withdraw as counsel a few weeks prior to defendant's sentencing hearing. Korando requested for the entire public defender's office to be removed from defendant's case, arguing that she was unable to effectively communicate with defendant to prepare the posttrial motion or for sentencing. She also cited defendant's ARDC complaints against his previously appointed attorney, Moyer, and herself. The trial court denied the motion, noting it read and considered the motion's contents, Korando's arguments, defendant's grievances throughout the case, and "what has transpired throughout the course of this case." The trial court stated that defendant's ARDC letters were filed and explored and an ARDC complaint standing alone did not necessarily require granting a motion to withdraw. It further stated that defendant's statements regarding Korando at the hearing and at prior hearings were matters of trial concerns and did not warrant appointment of new counsel.

¶ 59    The decision to deny an attorney's motion to withdraw is left to the sound discretion of the court. See *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000); *People v. Catalano*, 29 Ill. 2d 197, 204 (1963). The burden therefore rests with the moving party to prove, to the court's satisfaction, the legitimacy of the request, and when the petitioner either fails or refuses to do so, the court may properly deny the motion. *Catalano*, 29 Ill. 2d at 204. "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Baez*, 241 Ill. 2d 44, 106 (2011). Under counsel's ethical duties, she "shall continue representation notwithstanding good cause for terminating the representation." Ill. R. of Prof'l Conduct (2010)

21

R. 1.16(c) (eff. Jan. 1, 2010). Korando cited the ARDC complaints against defendant's previously appointed public defender and herself, as well as a breakdown in communication, as reason to withdraw the entire public defender's office from the case.

¶ 60    An unfounded ARDC complaint does not require the court to grant counsel to withdraw. See *People v. Childress*, 321 Ill. App. 3d 13, 31 (2001). To hold otherwise, would "invite frivolous complaints from defendants who, for one reason or another, may prefer to be represented by someone outside the public defender's office." *People v. Cook*, 279 Ill. App. 3d 718, 724-25 (1995). Here, Korando stated that defendant's ARDC complaint regarded things that did not happen and her motion to withdraw noted that ARDC determined no action on defendant's complaint was warranted. Therefore, the court did not abuse its discretion in finding that defendant's ARDC complaint did not warrant withdrawal.

¶ 61    While a breakdown in communication may be a proper basis for granting a motion to withdraw, I find under the circumstances of this case that the trial court's denial of the motion to withdraw was neither arbitrary nor unreasonable. Despite Korando's allegation of a breakdown in communication lodged before the trial began, she was able to test the State's case by making objections, arguing the lack of DNA evidence, raising the holes in the State's chain of custody for the evidence discovered during the search, highlighting the lack of testimony from the other individuals present at the house during the search, and questioning the validity of the search and defendant's interview where neither were properly memorialized. She also successfully defended defendant on one count. The hearing on the motion to withdraw also reveals that defendant and Korando were in communication about defendant's concern that corrections needed to be made to the presentence investigation report. Defendant was clearly unhappy with Korando's representation throughout trial. However, based on the record, the "breakdown in communication"

22

appeared to relate to a disagreement over trial tactics, rather than an inability to effectively represent defendant. Throughout the proceedings, defendant repeatedly alleged Korando would just say "No" whenever he asked her to present specific exhibits, arguments, or questions. Such communicative exchange indicates Korando simply disagreed with how to proceed in the case rather than a failure to listen to defendant or defendant refusing to speak with Korando. Disagreement between representation and trial tactics is not automatic grounds for substitute of counsel. *People v. Royark*, 215 Ill. App. 3d 255, 266 (1991).

¶ 62    I also find defendant's numerous allegations that Korando was biased against him and did not want to represent him, to which Korando denied, were insufficient to warrant the withdrawal of the public defender's office. I do not dispute that defendant and Korando's relationship was difficult and contentious. However, "[t]he fact that an appointed attorney and his client bicker between themselves does not require a court to grant a motion for new counsel." *Id.* Defendant's distaste for his appointed attorney and wish to be represented by another attorney is insufficient to warrant withdrawal by counsel. *People v. Johnson*, 24 Ill. App. 3d 152, 160 (1974). Defendant concedes in his brief that he may not create a conflict of interest with his attorney by refusing to properly communicate.

¶ 63    I agree with the sentiments in *People v. Ames*, 2012 IL App (4th) 110513, ¶ 48, that under these circumstances court-appointed counsel "should understand that (1) they can do no more than their best under difficult circumstances and (2) in most instances, there is no reason to believe—as shown in this very case—that any other court-appointed attorney will be able to do better." This is particularly true here where Korando replaced a previously appointed public defender based on a breakdown of communication with defendant.

23

¶ 64    Ultimately, I find this case is similar to those that declined to find good cause to substitute appointed counsel based on defendant's inability to relate to the public defender, defendant's allegation that the public defender was prejudiced against him, or defendant having prior frustrating relationships with public defenders. See *People v. Finley*, 63 Ill. App. 3d 95, 103 (1978) (collecting cases). As the *Ames* court explained,

> "Despite the difficulties court-appointed counsel may encounter representing an obstructionist defendant determined to interfere with an orderly and constructive attorney-client relationship, trial courts should almost never permit such counsel to withdraw from representing that defendant. A trial court's doing so only rewards and enables bad behavior. Courts delude themselves by thinking an obstructionist defendant is somehow going to behave better when a new court-appointed counsel enters the picture." *Ames*, 2012 IL App (4th) 110513, ¶ 50.

¶ 65    Accordingly, the court's denial of Korando's motion to withdraw was not arbitrary fanciful, unreasonable, or a position that no reasonable person would take.

¶ 66    It is also important to remember that "[t]he trial court is required to appoint the public defender unless it determines that such an appointment would prejudice the defendant's rights." *People v. Cook*, 279 Ill. App. 3d 718, 725 (1995) (citing 725 ILCS 5/113-3(b) (West 1992)); see 55 ILCS 5/3-4006 (West 2022). I glean no prejudice from the record. Defendant argues that without open lines of communication, it is likely that certain parts of a defendant's history would be overlooked or not put into appropriate context. However, as explained above, the record shows that defendant and Korando communicated; they simply disagreed with each other. Additionally, at the sentencing hearing, Korando indicated that she communicated with defendant in preparation for the hearing. Korando explained the corrections to the presentence investigation report that

24

defendant wanted, and that defendant denied her offer to obtain documentary proof to support defendant's allegations. Defendant fails to allege any injustice beyond his previous ineffectiveness claims which I have already found meritless or pertaining to trial strategy. Because defendant's rights were not prejudiced by the public defender's office's representation, the court therefore was unable to appoint counsel other than the public defender's office.

¶ 67    For the foregoing reasons, I dissent.